**MIDWEST PRECOTE COMPANY, a corporation, Appellant,**

v.

**CLAY COUNTY, Missouri, L. Madison Bywaters, Noah D. Hart and Ford White, Judges of the County Court of Clay County, Missouri, Kenneth Logan, O. M. Wren, and Russell L. Beamer, Commissioners of Birmingham Special Road District, Respondents.**

No. 45534.

Supreme Court of Missouri,

Division No. 1.

May 13, 1957.

Motion for Rehearing or to Transfer to Court en Banc Denied June 10, 1957.

Wherritt & Turpin, Alan F. Wherritt, William J. Turpin, Liberty, for appellant.

Francis G. Hale, Robert E. Coleberd, Liberty, for respondents, Clay County, L. Madison Bywaters, Noah D. Hart and Ford White, Judges of the County Court of Clay County.

COIL, Commissioner.

Appellant, plaintiff below, brought an action to recover the sum of $5,900.28 from Clay County, Missouri. Count 1 of the petition was a claim based upon an amount due for labor and materials furnished the Birmingham Special Road District of Clay County. Count 2 was an equitable claim based upon the theory that Clay County had been unjustly enriched by the receipt of money which in equity and good conscience belonged to plaintiff. Plaintiff has appealed from the trial court's judgment for defendants on both counts.

The Birmingham Special Road District No. 23 of Clay County (hereinafter sometimes referred to as District 23) was organized under the provisions of Sections 233.010–233.165. All section numbers refer to RSMo 1949, V.A.M.S. The road district was in existence and operating in July, 1952. For the purposes of this case, we shall assume without deciding that plaintiff, a corporation, legally contracted in writing with District 23 to, and pursuant thereto did, perform services and furnish materials for the maintenance and repair of the district's roads during the month of July and the first few days in August, 1952; that the reasonable contract charge therefor was $11,400.28; that upon presentation of plaintiff's bill in that amount, the District 23 commissioners issued the road district's $5,500 warrant (presumably on the treasurer of District 23) to apply against the bill, which warrant was paid; and that there remained due plaintiff the sum of $5,900.28. The $5,500 payment practically exhausted the money in the treasury of District 23.

Pursuant to and in accord with Section 233.160, a petition was filed on August 17, 1951, in the office of the county clerk for the "disorganization" of District 23; the County Court, on July 15, 1952, called a special election in District 23 for August 5, 1952; and the district, as a result of that election, was "disincorporated" on August 5, 1952. On August 19, 1952, the clerk of the County Court wrote the "former commissioners of Birmingham Special Road District," notifying them that the district, by reason of the vote of its inhab-

itants on August 5, 1952, had been "thereby duly dissolved as provided by law" and further advising that upon receipt by the county of the district's assets as of August 5, 1952, an order discharging the former commissioners from liability to the county would be entered.

The defendants listed in the caption hereof are Clay County, the members of the County Court of Clay County at trial time, and the commissioners of District 23 at the time of its "disorganization." Plaintiff has abandoned count 1 of its petition and, as noted, by count 2 sought a $5,900.28 judgment against Clay County only. No relief was sought against the commissioners of District 23 at the time of its "disorganization" or against the members of the County Court of Clay County except the request that the trial court order defendant County Court judges "to levy and collect a tax at the next earliest possible time against the property formerly in Birmingham Special Road District sufficient to pay plaintiff's claim and interest thereon and when the same is collected, to pay out and deliver the same to plaintiff or in the alternate * * * [direct the county court judges] * * * to issue the warrant of the County to plaintiff in the sum of $5,-900.28 together with interest at 6% per annum from May 15, 1953."

It appears therefore that the sole question initially involved is whether plaintiff was entitled to a judgment against Clay County on the theory that the county was unjustly enriched by the receipt of money which in equity and good conscience belonged to plaintiff. It is plaintiff's theory, as we understand it, that Clay County received and has retained money which should have been allocated to pay for plaintiff's labor and material used on District 23's roads.

The only evidence adduced in support of that theory is this: that the assessed valuation of property in District 23 for 1951 was $505,895 and for 1952 was $628,-555; that on August 20, 1952, the Clay County Court ordered a tax of 35¢ per $100 valuation on real and personal property in the county to be used for road and bridge purposes for the year 1952; that the 1952 property and town lot tax book, which was used in the collector's office for the purpose of tax collection for 1952, showed that a tax on property in District 23 was "districted" and collected for Special Road District 23; and that the distribution sheet prepared by the county collector, and by him turned over to the county treasurer, showed that of the taxes collected in December, 1952, or January, 1953, no money was distributed to District 23 for the year 1952. It was not definitely shown what happened to the 35¢-per-$100 valuation levied by the County Court and thereafter presumably collected for the year 1952, but the county collector testified that he assumed that that money went to the "county special road district." It was also shown that *in 1951* the tax collected by Clay County for District 23 amounted to $9,129.59.

It should be noted that in accordance with the provisions of Section 233.160, heretofore noticed, the Birmingham Road District 23 was "disincorporated" and the operation of the law under which that special road district functioned ceased on August 5, 1952, the date when the resident taxpayers of District 23 voted the "disorganization of the special road district." The order of the County Court for a 35¢ tax per $100 valuation, the *collection of which tax constitutes the money which plaintiff claims unjustly enriched Clay County,* was not made until August 20, 1952, or 15 days after District 23 had ceased to have any existence and 15 days after the provisions of the various statutes under which it was organized and operated ceased to be applicable.

But, irrespective of that and other relevant considerations, there is at least one insurmountable obstacle to plaintiff's recovery herein. That is the fact that plaintiff's evidence fails to show that any money received by Clay County by reason of the collection of taxes levied by the County

Court in 1952 against property located in former Special Road District 23 was not expended by the county for the use and benefit of the roads and bridges located in former District 23. In fact, the only testimony on the subject, viz., the assumption of the county collector, was to the effect that all such money received went to the "county special road district" which, we assume, was a road district which came into existence by virtue of Section 231.010 upon the "disorganization" of Special Road District 23. It is apparent that there could have been no unjust enrichment of Clay County by reason of its receipt of money which was formerly allocated to District 23 (when that district was in existence) in the absence of evidence tending to prove that such money so received was not spent for the benefit of roads within former District 23. There was, as noted, no such evidence, and thus there was no unjust enrichment shown, and, therefore, plaintiff failed to prove a fact essential to its recovery, viz., that Clay County received and retained (or perhaps wrongfully disposed of) money which in equity and good conscience belonged to plaintiff. Straube v. Bowling Green Gas Co., 360 Mo. 132, 142, 227 S.W.2d 666, 671 [8], 18 A.L.R.2d 1335.

There was testimony by a deputy that the county treasurer's records disclosed that he at trial time had on hand $270.73 "belonging to Birmingham Special Road District." The evidence does not explain the source of that money. Further, it was agreed at the trial that the last treasurer of District 23 still had on hand, deposited in a bank in the name and to the credit of Birmingham Special Road District, the sum of $961.23. Such former treasurer is not a party to this action.

Some statements in plaintiff's brief indicate that one of the purposes of the instant action is to have this court direct what disposition should be made of the two sums heretofore mentioned. It must be apparent, however, that no such question is before us in the instant action and that any declaratory obiter pertaining thereto would be inappropriate.

The judgment is affirmed.

VAN OSDOL and HOLMAN, CC., concur.

PER CURIAM.

The foregoing opinion by COIL, C., is adopted as the opinion of the court.

All concur.